# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANDREW P. GREEN,

          Plaintiff,

v.                                                                    Case No. 20-CV-969

KILOLO KIJAKAZI,[1]
**Acting Commissioner of the Social Security Administration,**

          Defendant.

## DECISION AND ORDER

## 1. Introduction

Alleging that he has been disabled since December 16, 2015 (Tr. 35), Andrew P. Green seeks disability insurance benefits and supplemental security income. After Green's application was denied initially (Tr. 88-102) and upon reconsideration (Tr. 120-38), a hearing was held before an administrative law judge (ALJ) on April 1, 2019 (Tr. 57). On July 2, 2019, the ALJ issued a written decision concluding that Green was not disabled. (Tr. 49.) After the Appeals Council denied Green's request for review on May 4, 2020 (Tr.

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1-4), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Green "has not engaged in substantial gainful activity since December 16, 2015, the alleged onset date[.]" (Tr. 37.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Green has the following severe impairments: "bilateral wrist disorder; headaches; disorders of the heart; avascular necrosis; degenerative disc disease with lumbar radiculopathy; polyneuropathy; anxiety; depression; and post-traumatic stress disorder (PTSD)[.]" (Tr. 38.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20

C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Green "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 38.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Green has the RFC

> to perform sedentary work, as defined in 20 CFR 404.1567(a) and 416.967(a), except with no climbing ropes, ladders, and scaffolds or exposure to heights and hazards; occasional climbing ramps and stairs, stooping, kneeling, crawling, balancing, or crouching; and no more than frequent hand use. He also is limited to simple, routine, repetitive, noncomplex work with no more than occasional changes in the work routine.

(Tr. 40.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Green "is unable to perform any past relevant work[.]" (Tr. 47.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Green] can perform[.]" (Tr. 47.) In reaching that conclusion the ALJ relied on testimony from a vocational expert, who testified that a hypothetical individual of Green's age, education, and work experience could perform the requirements of occupations such as "document preparer (DOT # 249.587-018; 91,000 jobs nationally); charge account clerk (DOT # 205.367-014; 33,000 jobs nationally); and final assembler (DOT # 713.687-018; 25,000 jobs nationally)." (Tr. 48.) After finding that Green could perform work in the national economy, the ALJ concluded that he was not disabled. (Tr. 48.)

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

4
Case 1:20-cv-00969-WED   Filed 07/29/21   Page 4 of 17   Document 30

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Green argues that the ALJ erred by (1) improperly concluding Green could frequently handle objects; (2) not accounting for his concentration, persistence, or pace limitations in the RFC assessment; (3) using incorrect standards to analyze subjective symptoms; and (4) failing to support with substantial evidence her conclusion that Green could perform other jobs in the economy.

**4.1. Handling Ability**

In discussing Green's residual functional capacity, the ALJ said the following about his handling ability:

> Moreover, the claimant reports ongoing bilateral wrist pain despite undergoing seven surgeries for his wrists since his 1989 fall (1F-3, 129). Examinations in September and October 2015 showed wrist tenderness to palpation and positive Tinel, carpal compression, and Phalen's testing (1F-4, 117). An EMG at that time showed mild bilateral carpal tunnel syndrome and ulnar neuropathy (1F-94). The claimant underwent right carpal tunnel release surgery with improved sensation but he continued to report mild tenderness (1F-208, 5F-1). August 2016, December 2017, April 2018, and March 2019 evaluations collectively showed diminished range of motion, decreased sensation, tenderness to palpation, and positive Tinel testing in his wrists (10F-158, 12F-6, 16F-2, 40F-1). Diagnostic imaging of the claimant's wrists in December 2015 showed bilateral radiocarpal joint space narrowing with a loose body in the lateral aspect of the joint space on the right (3F-79). Follow-up imaging in September 2016 documented ulnar styloid nonunions, mild degenerative joint disease, and evidence of previous surgeries (5F-2, 6F-43-44). The claimant received wrist injections, occupational therapy, braces, and temporary casting for his wrists, without reported relief.
>
> …
>
> Furthermore, treating providers indicated the claimant's subjective statements regarding his wrist pain are out of proportion to examination and diagnostic imaging findings (16F-2). The claimant evidenced strong grip strength and intact sensation during August 2016 examination (10F-158). In December 2017, the claimant exhibited full range of motion with normal (5/5) strength in his upper extremities and symmetrical reflexes (12F-6). An EMG that month revealed no carpal tunnel syndrome (12F-10). In April 2018, the claimant displayed negative Phalen and Durkin testing, intact sensation, and 50-55 degrees of wrist extension and flexion (16F-2). Treating providers again noted that the claimant maintained 45-50 degrees of extension and flexion with no significant joint space narrowing (40F-1).

(Tr. 42, 44.)

Green argues that the ALJ erred in assessing his handling ability by ignoring relevant objective evidence, improperly assessing his daily activities, misstating the

consistency of contrary opinions, and relying on a conclusory medical statement. (ECF No. 29 at 1.)

In response, the Commissioner argues that the ALJ "properly discounted the reviewing physicians' occasional-lifting recommendation based on its inconsistency with other evidence, specifically the opinions of Drs. Olvey and Zellner, as well as plaintiff's activities involving intensive hand use[.]" (ECF No. 28 at 5-6.) She argues that, "because the ALJ thus provided a sound rationale linking substantial evidence to her determination, it must stand." (ECF No. 28 at 6.)

### 4.1.1. Objective findings

Green argues that the ALJ did not support with an accurate and logical bridge her evaluation of his subjective statements and the opinion evidence. (ECF No. 20 at 13.) He argues that the ALJ did not include in her evaluation several objective test findings that quantified Green's grip strength. (ECF No. 20 at 13.) He also argues the ALJ indicated that multiple providers found Green's "subjective statements are out of proportion to examination and diagnostic imaging studies," when only one provider did so. (ECF No. 20 at 15.)

Although Green points to objective evidence that supports an occasional handling limitation, the ALJ also discussed objective evidence that supports her conclusion that such a limitation is unwarranted. (Tr. 42, 44.) The ALJ noted several providers found Green had 5/5 strength in his upper extremities. (Tr. 42; *see, e.g.*, 483, 1062, 2065.) She

discussed mild carpel tunnel EMG findings in September and October 2015 and similar follow up images in September 2016. (Tr. 42.) And she discussed positive Tinel's testing showing some compression neuropathy and positive Phalen's testing for carpel tunnel. (Tr. 42.)

In short, the ALJ discussed objective medical findings regarding Green's handling abilities that both support and undermine her conclusion that he does not require hand restrictions beyond frequent handling. Green has not shown that the ALJ erred in finding the evidence against an occasional handling restriction more persuasive than the evidence for it.

### 4.1.2. Activities of Daily Living

Green argues the ALJ considered only the type of his daily activities without considering the extent, duration, and frequency with which he engaged in them. (ECF No. 20 at 16.) He argues that the ALJ did not explain how his mundane daily activities were inconsistent with his allegations, acknowledge the limited nature of his video game playing, or elicit more information about activities that seem more strenuous on their face. (ECF No. 29 at 3-4.) The Commissioner responds that Green's "ability to engage in these activities, alone, belies the notion that his wrist impairment was disabling." (ECF No. 28 at 8.)

The ALJ noted that the record includes evidence that Green is:

capable of preparing meals, performing chores (wiping down cabinets, dusting, cleaning cat litter box), driving, shopping, playing video games,

> helping a friend with house projects (which involved heavy lifting), working on siding and the garage, setting up a workshop, using a wood chisel, refacing cabinets (which involved sanding, painting and using a hammer), and performing odd jobs for family and friends.

(Tr. 44.) (Internal citation omitted.)

Although Green points to evidence that he was limited in his activities of daily living, that does not mean the ALJ's findings were not supported by substantial evidence. (ECF No. 20 at 15-16.) Faced with evidence that cuts both ways, the fact that the ALJ chose one side does not suggest error. *Wolvin v. Saul*, No. 18-CV-1285, 2019 U.S. Dist. LEXIS 171953, at *5-6 (E.D. Wis. Oct. 3, 2019). "Two contrary conclusions may each be supported by substantial evidence." *Id.*

The ALJ supported with substantial evidence her finding that Green's daily activities indicate he is not as limited as alleged.

### 4.1.3. Medical Opinions

The state agency medical consultants opined that Green is restricted to occasional handling. The ALJ found that, because an occasional handling restriction is not consistent with the opinions of examining physicians Dr. Scott Olvey and Dr. Benjamin Zellner, among other considerations, a frequent handling restriction was "more apt." (Tr. 46.)

Green argues that, because Dr. Olvey's only opinion on handling is that he cannot perform work with "high force gripping," his opinion is consistent with the state agency opinions that limit Green to occasional handling. (ECF No. 20 at 17.) Because the state agency physicians "were aware of" Dr. Olvey's opinion and gave it great weight when

9

they limited him to occasional handling, Green argues that the state agency consultants harmonized their opinions with his. (ECF No. 20 at 17.) The Commissioner responds that, because "Dr. Olvey did not opine on the frequency with which [Green] could handle the light objects at issue in sedentary work," the reviewing physicians did not base their occasional handling limitation on his opinion but on Green's complaints of chronic pain. (ECF No. 28 at 6.)

The ALJ found the state agency medical consultants' limitation of no more than occasional handling somewhat persuasive. But she found that that limitation was not consistent with Dr. Olvey's opinions. (Tr. 46.) However, the state agency medical consultants explicitly gave Dr. Olvey's opinions great weight, and Dr. Olvey's opinions are not inconsistent with an occasional handling limitation. A person can be both limited to no high force gripping and occasional handling. The ALJ did not explain why she found the limitations to be inconsistent. However, as discussed above, the ALJ also considered the objective findings and Green's activities of daily living when she determined that Green could frequently handle. Because other evidence the ALJ cited adequately supports her handling conclusion, the error is harmless. *Matthews v. Saul*, 833 F. App'x 432, 437 n.3 (7th Cir. 2020) (unpublished).

Green also argues that, because Dr. Zellner's opinion is a conclusory statement about Green's ability to work, it is not a medical opinion that could be credited. (ECF No.

20 at 18.) The Commissioner responds that Dr. Zellner's opinion includes a discussion of the objective evidence on which he relied. (ECF No. 28 at 8-9.)

Dr. Zellner stated that he does "not have a plan for [Green] after [the] negative nerves test. His subjective symptoms are out of proportion to his physical exam, as well as radiographic findings… There is no objective evidence that the patient cannot work with his bilateral hand condition." (ECF No. 1825.) The ALJ specifically noted that Dr. Zellner personally observed and examined Green and found he had "subjective pain complaints out of proportion to objective physical and diagnostic evaluation findings." (Tr. 45.) Although Dr. Zellner's opinion contains an arguably conclusory statement about Green's ability to work that is reserved to the ALJ, it also considers his assessment of a negative nerve test, physical examination, and radiographic findings. Green has not shown that the ALJ improperly considered Dr. Zellner's opinion.

The ALJ's conclusion to limit Green to frequent handling is supported by substantial evidence.

### 4.2. Concentration, Persistence, or Pace

Green argues that, because the ALJ found he had deficits in concentration, persistence, or pace but did not specifically address these limitations in the RFC, the hypothetical posed to the VE did not incorporate all of his limitations. (ECF No. 20 at 19.) He argues that, because "[t]he ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity," the ALJ's

11
Case 1:20-cv-00969-WED   Filed 07/29/21   Page 11 of 17   Document 30

limitation to "simple, routine, repetitive, noncomplex work with no more than occasional changes in the work routine" did not account for his deficits in concentration, persistence, or pace. (ECF No. 20 at 20.) He also argues that, by omitting the ten percent off-task limitation, the missing discussion of that limitation left a hole in the VE's knowledge. (ECF No. 29 at 8-9.)

The Commissioner argues that, because the simple tasks limitation was within the narrative of the concentration, persistence and pace discussion, it addressed Green's concentration, persistence, and pace limitation. (ECF No. 28 at 11.) She also argues that, because the ten percent off task limitation is not well explained or consistent with the other evidence, the ALJ properly failed to include the limitation. (ECF No. 28 at 11.) And she further argues that, because the VE testified that employers tolerate up to ten percent time off task regardless, any error in failing to include the limitation in the hypothetical would not change the outcome. (ECF No. 28 at 11.)

The state agency psychologists concluded that Green was limited to simple work and "is likely to have difficulty maintaining concentration and would do best in a work setting that allowed him to be off tasks [sic] 10% of the work day [sic]." (Tr. 100, 135.) The RFC included the simple work limitation but not the ten percent off task limitation. (Tr. 40.) The VE testified that, for the jobs the ALJ found Green could perform, employers would generally tolerate ten percent time off task. (Tr. 83.) Green does not contest this testimony.

12

Case 1:20-cv-00969-WED    Filed 07/29/21    Page 12 of 17    Document 30

It is unnecessary to consider the merits of Green's arguments because Green has not shown he was harmed by any alleged error—that is, the VE testified that employers will generally tolerate up to ten percent time off-task regardless of whether the limitation was in the RFC. (Tr. 83.) Thus, the court is convinced the ALJ would reach the same result if the ten percent off-task limitation was in the RFC. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result").

### 4.3. Subjective Symptom Evaluation Standard

Green contends that the ALJ applied incorrect legal standards when she found that Green's "statements concerning the intensity, persistence, and limiting effects of those symptoms are *not entirely consistent* with the medical evidence and other evidence in the record" and "[t]he record *fails to fully substantiate* the claimant's allegations of disabling symptoms" (Tr. 43.) (Emphasis added.) The ALJ also stated twice that the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence," which Green argues is the correct inquiry. (Tr. 40, 43; ECF No. 20 at 22.)

In response the Commissioner argues that the Seventh Circuit recently rejected as harmless challenges to an ALJ "finding that a claimant's allegations are both 'not entirely consistent' with other evidence and 'can[not] reasonably be accepted as consistent' with other evidence." (ECF No. 28 at 7) (citing *Fanta v. Saul*, 848 F. App'x 655, 659 (7th Cir.

2021) (unpublished)). He argues that, because "the ALJ cited specific evidence dissonant with plaintiff's allegations," the phrasing is harmless. (ECF No. 28 at 7.)

The ALJ used inconsistent standards for evaluating Green's subjective symptoms, finding at different times the record "fails to fully substantiate" his allegations of symptoms, that they are "not entirely consistent with" the evidence, and that they cannot "reasonably be accepted as consistent with" the evidence. (Tr. 40, 43.) Only the final phrase is an accurate recitation of the standard. *See* 20 C.F.R. § 404.1529(a) ("In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.").

Both of the incorrect standards referenced by the ALJ appear to be more rigorous standards. *See, e.g.*, *Minger v. Berryhill*, 307 F. Supp. 3d 865, 871-72 (N.D. Ill. 2018) (remanding where ALJ used the "not entirely consistent" standard). The "fails to fully substantiate" standard is particularly concerning. It appears on its face to be much more rigorous than "reasonably accepted as consistent," the correct standard, and even the incorrect "not entirely consistent" standard. The Seventh Circuit has held that the "not entirely consistent" boilerplate "is innocuous when … the language is followed by an explanation for rejecting the claimant's testimony." *Fanta*, 848 F. App'x at 659 (citing *Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013)). Here, that boilerplate is followed by a paragraph that begins with "[t]he record fails to fully substantiate" and goes on to

analyze medical evidence, presumably with the standard announced at the start of the paragraph. (Tr. 43.)

Because it is impossible to determine which of the three standards the ALJ actually applied, the ALJ failed to build an accurate and logical bridge between the evidence and his subjective-symptom evaluation.

The ALJ offered other explanations for discounting the severity of Green's subjective symptoms. However, because the ALJ recited three legal standards, the court cannot be sure which one she used to evaluate the limiting effects of Green's symptoms. If the ALJ applied the wrong standard, it may have materially affected her decision. Here, the ALJ's potential application of an incorrect legal standard was a mistake of law that necessitates remand.

### 4.4. Vocational Expert

The ALJ identified the following jobs Green was capable of performing given his residual functional capacity:

- document preparer (DOT # 249.587-018; 91,000 jobs nationally);
- charge account clerk (DOT # 205.367-014; 33,000 jobs nationally); and
- final assembler (DOT # 713.687-018; 25,000 jobs nationally).

(Tr. 48.)

Green argues that the VE's testimony obscured the nature of the jobs, and as a result the testimony is not substantial evidence to support the step five denial. (ECF No.

15
Case 1:20-cv-00969-WED Filed 07/29/21 Page 15 of 17 Document 30

20 at 25.) He argues that the broad titles the VE used in testimony, like document preparer, concealed the outdated nature of the DOT job, which was actually "Document Preparer, Microfilming." (ECF No. 20 at 25.) He argues that rational minds know that microfilming is obsolete and would not believe the VE's testimony that there are currently 91,000 microfilm document preparing jobs. (ECF No. 20 at 26.) And he argues that, because the conflict between the "obscure and outdated nature" of the jobs in the DOT and "the job titles offered as plentiful jobs" is so obvious, the ALJ is obligated to elicit a reasonable explanation without his objection at the hearing. (ECF No. 29 at 10.)

However, as the Commissioner responds, Green "did not even ask about the basis of that testimony at the hearing, much less did she object to it." (ECF No. 28 at 12.) She argues that, as a result, Green forfeited his argument challenging the VE's testimony. (ECF No. 28 at 12.) She also argues that the Seventh Circuit "has declined to remand any matter based on a vocational expert's use of the DOT." (ECF No. 28 at 12.)

Although the court agrees that the jobs like "document preparer" are antiquated, *see Wolvin*, 2019 U.S. Dist. LEXIS 171953, at \*18 (citing *Gulley v. Berryhill*, No. 17-CV-1782, 2019 U.S. Dist. LEXIS 25986, at \*10 (E.D. Wis. Feb. 19, 2019); *Ragsdale v. Saul*, No. 18-CV-946, 2019 U.S. Dist. LEXIS 113130, at \*18-19 (E.D. Wis. July 8, 2019)), by failing to object to the VE's testimony at the hearing (Tr. 82-86) Green forfeited the argument that the jobs proposed by the VE are unlikely to exist in significant numbers in the national economy, *see Ragsdale*, 2019 U.S. Dist. LEXIS 113130, at \*19(citing *Brown v. Colvin*, 845 F.3d 247, 254

(7th Cir. 2016). Nonetheless, on remand Green will have an opportunity to challenge the jobs identified by the VE during a second administrative hearing.

5. Conclusion

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of July, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge